To this deed there were two attesting witnesses, one of whom (129) only was examined by the plaintiff. He proved that at the date of the deed he saw it executed by Creecy; that Mr. Norcom, a cestui quetrust, was present; that it was not then signed by the plaintiff, and that he knew nothing of its execution by the latter, who was not present when it was attested by the witness. The clerk of the county court of Chowan proved that during the term of the court which commenced on the third *Page 116 
Monday of September, 1829, the plaintiff produced the deed in court, when it was proved by the oath of the same attesting witness, who was examined on the trial; that the plaintiff, upon its probate, took possession of the deed, promising to hand it himself to the register; that the register died in December following, and no successor was appointed until March, 1830; that the day after the register's death the deed was found among his papers. It was also proved that the deed was in the possession of the register within five or six weeks of its probate, and that while it was in the hands of the register, the defendant Collins took a copy of it. There was no evidence offered that the creditors named in the deed had ever required the plaintiff to take possession of the property, or to make a sale thereof; but an advertisement was proved by the plaintiff of an intended sale on 21 December, 1829. Creecy remained in possession of the property until it was seized by the defendant Rascoe, as hereafter mentioned.
The defendants produced the record of an attachment returnable to September Term, 1829, of Chowan County Court, at the instance of the defendant Collins, against the effects of Creecy, as an absconding debtor, which had been levied upon the slaves in dispute; from which it appeared that on 10 September, 1829, Creecy replevied the property levied on by giving a bail bond to the sheriff. At the ensuing term of the county court, the third Monday of that month, Creecy was surrendered in discharge of his bail, and judgment by confession was entered up in favor of the plaintiff. This judgment was obtained upon the bond mentioned in the assignment, as due the defendant Collins by Creecy. (130) Upon this judgment a fi. fa., tested the third Monday in September, issued to the defendant Rascoe, the sheriff of Chowan, and was levied upon the slaves in question, and subsequently they were bought by the defendant Collins. It was admitted that at the date of the assignment Creecy was indebted to an amount greater than the value of his property, and that several judgments against him must remain unsatisfied; that all the debts mentioned in the assignment were bona fide, and that the responsibilities therein mentioned had been incurred. There was no evidence that any of the creditors of Creecy accepted the deed of trust or participated in the making thereof, except that one of them, at the sale by the defendant Rascoe, requested a witness to value the slaves in order to subject the defendants to the full amount.
It was insisted for the plaintiff:
1. That the registration of the deed within six months being prevented by the negligence of the register, without the default of the plaintiff, and the registration having been completed as soon as possible after the appointment of a new register as to the plaintiff, it was to be taken as duly registered. *Page 117 
2. That the deed was delivered prior to the teste of the execution in favor of the defendant Collins, and thereby the title of the slaves in question vested in the plaintiff, so as to enable him to maintain this action.
3. That the deed was made bona fide, and upon a valuable consideration, and that this was a question of intent, and a matter of fact to be tried by the jury.
On the other hand it was urged:
1. That there was no evidence from which the jury could infer a delivery of the deed before the teste of the defendant Collins' execution.
2. That the deed not being registered within six months of its date, nor until after the teste of the execution and the levy and sale under it, could not prevail.
3. That the deed in its structure and provisions manifested an intent, which the law regarded as fraudulent against creditors not parties, nor assenting thereto, and that as this intent appeared upon the face of the deed, the judge ought to pronounce it fraudulent and void.
4. That the plaintiff could not maintain this action, because at (131) the time of the levy and sale the possession of Creecy and his right, by the terms of the deed, to hold the property had not ceased.
The presiding judge charged the jury that there was evidence from which they might infer that the deed was delivered prior to the teste of the execution. That although the registration of the deed, after the expiration of six months, might, under the circumstances of this case, have been deemed effectual, so as to cause it to inure from its delivery, had it, when proved, been left in the office of the county court, yet if it was not so left, but was taken out by the plaintiff, and not delivered by him to the register until five or six weeks after the term of the court, when it was proved, it would not in law avail against Collins' execution. That Creecy being insolvent, the deed was not bona fide against a creditor of his dissenting therefrom, and seeking by regular process to subject the property included in it to the payment of his debt, and that the intent to hinder, delay and defraud creditors appeared upon the face of the deed, and made it the duty of the court to pronounce it fraudulent in law.
A verdict was returned for the defendant, and the plaintiff appealed.
It appears from the evidence offered in this case that (133) at the time the subscribing witness attested the deed of trust, Creecy, who executed it, and Norcom, one of the creditors in whose favor the deed was given, were present. The deed must have been delivered *Page 118 
to Norcom, or retained by Creecy. If it was retained by Creecy, until it was offered for probate, it was not executed by him until that time. Therefore it cannot prevail against Collins. But if it was delivered to Norcom, it must be understood that he received it as the agent of Moore. And if Moore has assented to such delivery, the deed must be taken to have been executed when the delivery was made to Norcom. Now which is most reasonable to presume did happen? If the deed was retained by Creecy, the signing and sealing of it by him, and having it attested by a subscribing witness, amounted to nothing. The parties afterwards were in the same situation as they were before the transaction took place. Is it credible that the parties intended this? Norcom was interested in the transfer of the property, more so than Moore, the trustee. Was it not more likely that the deed should be delivered to him for safe keeping, than that it should be left in the hands of Creecy? Why was a witness called, why was anything done at this time if a transfer of the property was not contemplated? I therefore coincide in opinion with the judge of the Superior Court, that the circumstantial evidence was of such a character that it was proper to submit the question to the jury (134) whether the deed had been delivered prior to the teste of Collins' fi. fa. If it was so delivered to Moore, there is an end of the question as to its execution. If it was delivered to Norcom as his agent, such delivery was also good. It is laid down in Whelpdale's case, 5 Rep., 119, that if an obligation be delivered to another to the use of the obligee, and the same is tendered to him, and he refuses, then the delivery has lost its force, and the obligee can never after agree to it. It follows, of course, that if the obligee assented to the delivery to the stranger, the delivery was good, and it must be considered the act and deed of the obligor. Newbern Bank v. Pugh, 1 Hawks, 198; 1 Starkie on Ev., 333;Johnson v. Baker 6 Eng. C. L., 479.
But the judge was also of opinion that the deed was void as to creditors dissenting therefrom, and seeking by regular process of law to subject the same property to the payment of their just demands, and that an intent to defraud such creditors was apparent on the face of the deed, and that it was the duty of the court to pronounce it fraudulent.
Deeds of trust are not often made by debtors that are quite solvent. They are commonly made with a view of better securing some creditors, and in preference of others. And were the question open, and of the first impression, I would probably coincide with the judge in this part of the case also. Because when a debtor has several equally meritorious creditors, and has not wherewith to satisfy them all, and he appropriates what he has to the satisfaction of some of them, to the exclusion of others, it is a step which may gratify his feelings, but it cannot satisfy the *Page 119 
reasonable demands of justice, or be approved of by a correct sense of fair dealing. But the law on this subject has undergone too many editions, and taken too deep root, to admit of judicial remedy. It is a measure of justice, placed in the power of debtors, in all the States of the Union, as far as I am informed. No doubt, in the present case, the object of Creecy was to secure some creditors, and of course injure others. Still, the creditors secured had a right to be paid their debts, and a deed of trust made to effect that end the law will not consider (135) fraudulent. I see nothing in the deed of trust that distinguishes it from the common case of trusts. I am therefore not prepared to say that it carries on its face proof that it is fraudulent.
The next question that arises in this case is whether, as the deed of trust had not been registered in due time on account of the death of the register, it ought to be given in evidence. It will be admitted that where two individuals enter into a contract, and one of them is prevented, by the act of the other, from doing a thing which he stipulated to do for the benefit of the other, the latter can claim no advantage from the failure or omission. It will be admitted, also, that the Legislature may contract with an individual, and that the Legislature is represented by its laws, its officers, and its agents. And as far as such officers and agents act within the sphere of their official duty, they represent, and in fact are the legislative will. When they omit doing a thing which they ought to do, the Legislature, by its agent, has failed on its part. And if the failure was the cause why something stipulated to be done by an individual was not done, no advantage can be taken of the omission by the Legislature. Otherwise, it would do that itself which it will not countenance in an individual.
Generally speaking, when a contract is established each party is entitled to the benefit of it. But to some contracts (and the present deed of trust is one of them) policy has annexed another prerequisite — registration. In other words, a new contract is made between the grantee and the Legislature. The Legislature represents all other persons except the parties to the deed. All other persons are bound by their stipulations. What are the stipulations in this case? They are (in order that no person may be defrauded by the deed of trust, but all may have notice of it) that the Legislature shall appoint a register, whose duty it shall be to register the deed of trust, and the grantee shall in due time furnish the register with it for that purpose. Now as the Legislature has failed in providing an officer, the want of registration is not to be imputed to the grantee. Nor ought the defendant to derive any benefit from the failure, because the Legislature enacted the (136) provision of registration for his benefit. And if through its *Page 120 
omission there was no register, he cannot complain. The grantee is entitled to the benefit of the deed, as if no law for registration had been made. To exact from an individual an impossibility, as the only terms on which he should be entitled to the benefit of a contract, would be to impair and destroy that contract.
I have read of a Roman emperor, who suspended his laws so high that it was with difficulty they could be read, for the purpose of entrapping his subjects and collecting penalties. It would have answered the same purpose to enact that the subject should do a particular thing, and then to have put it out of his power to do it, and claimed the penalty.
I think this action is sustainable. The plaintiff had under the deed of trust the legal title to the property in question, and the possession of Creecy was not adverse to it, but held under it for the trustee.
HENDERSON, C. J., concurred with HALL, J.